**FILED**

**JUL 1 7 2007**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA
--------------------------------------------------------------------X
SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 32BJ,
101 Avenue of the Americas
New York, NY 10013

               Plaintiff,

    -against-

QUALITY ASSURED CLEANING CONTRACTORS,
2789 Hartland Rd.
Falls Church, VA 22043

               Defendant.
--------------------------------------------------------------------X

Case: 1:07-cv-01272
Assigned To : Robertson, James
Assign. Date : 7/17/2007
Description: Labor-ERISA

## PETITION TO COMPEL ARBITRATION

### INTRODUCTION

Plaintiff Service Employees International Union, Local 32BJ ("Union" or "Local 32J"), brings this action to compel Defendant Quality Assured Cleaning Contractors ("QACC" or "Employer") to arbitrate a labor grievance in accordance with the parties collective bargaining agreement, and in support thereof alleges the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this claim pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 and 28 U.S.C. §1331.

2. Venue is proper in this District because the events giving rise to this occurred in this District.

**PARTIES**

3.  Local 32BJ, a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 152(5), represents over 85,000 building service workers in New York, New Jersey, and Connecticut, Philadelphia, and the District of Columbia.

4.  Defendant QACC is an employer engaged in interstate commerce within the meaning of Section 2(2) of the Act, 29 U.S.C. § 152(2).

**CAUSE OF ACTION**

5.  Local 32BJ and QACC are parties to a collective bargaining agreement with effective dates of July 1, 2004 to June 30, 2007. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

6.  Article VI, Section 6.1 and 6.2 of the Agreement provides for the arbitration of disputes as to interpretation or application of the terms of the Agreement, and any disputes arising out of the Agreement.

7.  Article VI, Section 6.4 of the Agreement provides that no employee may be terminated without just cause.

8.  On or about March 23, 2006, the Employer discharged bargaining unit employee Petra Mercedes.

9.  Ms. Mercedes filed a grievance with the Union on March 24, 2006 contesting her discharge as unjust.

10. Attempts to resolve the grievance in the initial steps of the grievance process under the Agreement were not successful.

11. Accordingly, on July 5, 2006, the Union submitted a demand for arbitration to the Federal Mediation and Conciliation Service ("FMCS") in accordance with Sections 6.1 and 6.2 of the Agreement.

12. In response to the Union's request for arbitration, by notice dated July 12, 2006, the FMCS submitted a panel of proposed arbitrators to the Employer and the Union for their selection, as required by Article VI, Section 6.2 of the Agreement. Thereafter, the Union attempted to contact the Employer by phone to request that it participate in the arbitrator selection process under the Agreement.  By letter dated September 13, 2006, the Union again requested that QACC participate in the arbitrator selection process under the Agreement.

13. To date, the Employer has not responded to the Union's request to select an arbitrator, nor otherwise agreed to arbitrate Ms. Petra's discharge, as required by the Agreement.

14. The Employer's failure to agree to arbitrate is without legal justification.

15. Without this Court's order compelling QACC to submit the discharge of Ms. Mercedes, the Employer will continue to refuse to agree to arbitrate.

**WHEREFORE,** the Union requests the following relief:

1.  That an Order issue from this Court compelling the Employer to arbitrate the Union's grievance.

2.  That the Union recover its costs and attorneys fees incurred herein.

3. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 17, 2007

Respectfully submitted,

OFFICE OF THE GENERAL COUNSEL

By:     _____

Andrew Strom
Associate General Counsel
Local 32BJ, Service Employees
International Union, AFL-CIO
101 Avenue of the Americas, 19th floor
New York, New York 10013
Telephone: (212) 539-2941
Facsimile: (212) 388-2062

Dated: July 17, 2007

Thomas J. Hart (D.C. Bar No. 165647)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, N.W.
Suite 450
Washington, D.C. 20036
Tel. No. (202) 797-8700
Fax No. (202) 234-8231

Attorneys for Plaintiff

**EXHIBIT A**

AGREEMENT


BETWEEN


QUALITY ASSURED CLEANING CONTRACTORS, INC.


AND


LOCAL 82 SEIU, AFL-CIO


THE AMERICAN UNIVERSITY
LAW SCHOOL
Washington, DC


July 1, 2004 - June 30, 2007


07 1272

**FILED**

JUL 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PREAMBLE

This Agreement dated July 1, 2004, by and between Quality Assured Cleaning Contractors, Inc. hereinafter referred to as the "Company", and Service Employees International Union, AFL-CIO Local 82, hereinafter referred to as the "Union".

## WITNESSETH:

That for the purpose of mutual understanding and in order that a harmonious relationship may exist between the Company and the employees in the unit herein defined, and to the end that continuous and efficient service may be rendered by both parties hereto, and for the mutual benefit of both it is hereby agreed as follows:

## ARTICLE I – UNION REPRESENTATION AND MEMBERSHIP

SECTION 1:1. RECOGNITION. The Company recognizes the Union as the exclusive representative for the purpose of collective bargaining with respect to rates of pay, hours of work, and other conditions of employment for the Company's employees at The American University employed in the classifications set out in Exhibit A which is attached hereto and made a part hereof as if fully set forth herein.

## ARTICLE II – UNION SECURITY

SECTION 2:1. (a) In accordance with the provisions of section 8(a) (3) of the Labor Management Relations Act, 1947, all employees covered by this Agreement shall within thirty (30) days from and after the effective date of this Agreement, as hereinafter set forth, or within thirty (30) days after commencement of their employment with Quality Assured Cleaning Contractors, Inc., whichever is the later, become members of the Union and retain such membership during the period of this Agreement.

(b) Subject to the provisions of said section 8(a) (3), the Company will within five (5) working days after receipt of written notice from the Union, discharge any employee who is not in good standing in the Union as defined in the act, as required by the preceding Section 2.1(a). The Union agrees to indemnify and save harmless the Company from any liability and cost which it may suffer by reason of enforcing this provision.

## ARTICLE III – WITHHOLDING OF DUES

SECTION 3:1. CHECKOFF PROVISIONS. The Company agrees to deduct lawful uniform initiation fees and lawful uniform periodic dues from the wages of salaries of the employees covered hereby on the basis of signed voluntary check-off authorizations, and remit the same monthly to the Secretary Treasurer of the Union. It is provided, however, that such deductions shall be conditioned upon the submission to the Company for permanent filing of a duly executed unrevoked individual authorization from each

employee involved. The Union agrees to indemnify and save harmless Quality Assured Cleaning Contractors, Inc. from any liabilities it may suffer by reason of deducting initiation fees and periodic dues as herein provided.

SECTION 3:2. Individual authorization shall be irrevocable for a period of one (1) year from date thereof, or until the expiration, termination, renewal or extension of this Agreement, whichever occurs sooner. In the event that this Agreement is renewed or extended with a similar check-off provision, then the authorization of each employee, unless revoked in the meantime, will automatically become irrevocable for a further period of one (1) year or until the expiration, termination, renewal or extension of such Agreement as renewed or extended, whichever occurs sooner.

## ARTICLE IV – NON DISCRIMINATION

SECTION 4:1. The Company and the Union agree that there shall be no coercion of nor discrimination against any employee because of his membership in the Union, or because of his race, creed, color, sex, age, national origin, handicap or military service during the Vietnam Era, as required by law.

SECTION 4:2. Where the masculine or feminine gender is used in any job title or any provision in this Agreement, it is used solely for the purpose of illustration and is not, in any way, intended to designate the sex of the employee eligible for the position of the benefits provided by this Agreement.

## ARTICLE V – MANAGEMENT RIGHTS

SECTION 5:1. The management of the Company and the direction of its work force are solely and exclusively the functions of the management of the Company subject only to specific limitations identified of this Agreement. All the rights, functions, and prerogatives of management which are not modified by one or more explicit provisions of this Agreement are reserved and retained exclusive by the Company. In no event shall any right, function, or prerogative of management ever be deemed or construed to have been modified, diminished or impaired, except by explicit provision of this Agreement. Moreover, the Union recognizes that the Employer is subject to the rules required of a contractor performing services at The American University.

## ARTICLE VI – GRIEVANCE PROCEDURE

SECTION 6:1. A grievance is defined as any matter involving the interpretation or application of the specific terms and provisions of this Agreement, or disputes arising from this Agreement. In the adjustment of grievances the following shall apply:

Step 1. An employee having a grievance shall, within five (5) working days from the date of action first giving cause to the grievance, take the matter up with his or her immediate Supervisor verbally. The grievant's immediate Shop Steward ("Steward") shall be present at this meeting.

3

Step 2. If the grievance is not settled in Step 1 and the Union wishes to process the grievance further, the Steward or his/her designee may then present in writing a Union grievance to the General Manager within five (5) working days after the Step 1 meeting. The General Manager shall schedule a meeting within ten (10) working days after receipt of such grievance. The immediate Supervisor, aggrieved employee, Steward and Representative of the Union may be included in this meeting. The General Manager shall give the Union a written answer within five (5) working days following the Step 2 meeting.

Step 3. If the grievance is not settled at Step 2, the Union may refer the grievance to the President of the Company for a written response. Such request will be made within ten (10) days of the General Manager's decision and such response will be made within ten (10) days of the Union's request.

Step 4. If the grievance is not settled in Step 3, then the grievance may be submitted to arbitration, provided that written notice of intention is given by the Union to the Company within at least thirty (30) working days after receipt of the Labor Relations Department's decision. The decision of the arbitrator shall be final and binding on the parties.

SECTION 6:2. The arbitrator will be selected from a panel of five (5) nominees to be selected by the Federal Mediation and Conciliation Service. A request for the selection of a panel of nominees shall be submitted jointly to the Federal Mediation and Conciliation Service within two (2) weeks after the Company has received notice from the Union, if the Company and the Union are unable to agree upon which one of the five (5) nominees shall serve as the arbitrator, then within five (5) working days the Union shall strike one (1) name from the list and after the Union has struck one (1) name the Company shall strike one (1) name of the remaining four (4). This process shall continue alternating between the Company and the Union until the name remaining after the others have been so removed shall be the arbitrator.

SECTION 6:3. EXPENSE OF ARBITRATION. Each party shall bear his own expenses in connection with arbitration, and the expenses of the arbitrator will be equally shared.

SECTION 6:4. DISCHARGED EMPLOYEE. The above outlined grievance procedure shall be available to any discharged employee or any employee who has been suspended for disciplinary reasons who thinks such action was unjust and who has worked more than sixty (60) calendar days, provided written notice of such claim is given by the employee to the Company within five (5) working days after notice of the discharge or suspension is given to the employee. Whenever any employee has been discharged or suspended for disciplinary reasons, the Company will promptly notify the Representative of Local 82 of such discharge or suspension, in writing.

4

SECTION 6:5. WRITTEN WARNINGS. (a) Employees will be informed of all written warnings. The employee and the Union will be provided a copy of the warning. The Union Steward shall be present when the warning is issued, if requested by the employee.

(b) All written warnings issued after the effective date of this contract will expire twelve (12) months after their date of issuance and at that time will be removed from the employee's personnel file, and may not be used in any proceedings.

SECTION 6:6. SHOP STEWARDS. The Company will recognize a Shop Steward in each department for each shift and a Chief Steward for the bargaining unit. The Company shall recognize a Grievance Committee which shall be limited to nine (9) members of which no more than four (4) committee members will attend the Step 3 meeting. The Company shall be kept informed of the names of the Shop Steward and the Grievance Committee at all times.

SECTION 6:7. WAIVER OF TIME LIMITS. Time limits set forth in this Article may be waived by mutual consent of the Company and the Union. It is agreed to by the parties that multiple grievances may be disposed of at one monthly meeting between the Company and the Union at Step 2 of the grievance procedure in the month that the grievance was filed. This agreement will not apply to suspensions and terminations without the express consent between the parties.

## ARTICLE VII – NO STRIKE AND NO LOCKOUT

SECTION 7:1. NO STRIKE AND NO LOCKOUT. It is agree that the procedure herein specified shall be the exclusive method of settling all grievances and in view thereof, the Union agrees that there shall be no strike, sympathy strike, concerted slowdown, work stoppage or walk-out during the period of this Agreement, and the Company agrees that there shall be no lockout during the period of this Agreement.

## ARTICLE VIII – SENIORITY

SECTION 8:1. PROBATIONARY PERIOD. Newly hired employees will acquire no seniority until they have been employed sixty (60) calendar days. The Company will have the sole right to decide whether an employee is to be retained beyond sixty (60) calendar days. Dismissal of such new employees shall not in any way be subject to the grievance procedure.

SECTION 8:2. Employees who are retained after the sixty (60) calendar day period will accumulate seniority as outlined in Section 8.5 from the employee's last date of hire. Seniority will accumulate during layoffs of less than one (1) year and approved absences.

SECTION 8:3. LOSS OF SENIORITY. An employee will lose his seniority and all rights as an employee in the event of any of the following:

(a) He quits.

(b) He is discharged for just cause.

(c) He does not report for work when recalled from layoff. The Company will give personal notice of recall. If such personal notice cannot be given, the employee shall have seven (7) working days after mailing of registered letter to the employee's last known address. It will be the employee's responsibility to keep the Company advised of their current address.

(d) He fails to return to work on expiration of leave of absence.

(e) He has not worked for the Company for eighteen (18) consecutive months.

(f) He, while absent on account of sickness or injury or on leave of absence, takes employment elsewhere.

(g) He fails to notify the Company for three (3) consecutive days of absence unless unable to do so due to medical reasons.

(h) He is unable to work because of an injury or illness for a period of twenty-four (24) months, provided that during such leave he provides the Company with a medical certificate from a licensed physician for the medical leave period verifying that he is unable to return to work.

(i) An employee is promoted to a Management job and holds such job for a period of twelve (12) or more consecutive months. No such employee while holding a job outside the bargaining unit may bid against a bargaining unit employee for a bargaining unit job. If the employee returns to the bargaining unit within twelve (12) months, the employee will be returned to the seniority level held before being promoted to Management.

SECTION 8:4. JOB POSTING AND BIDDING. In the event a vacancy occurs in the project person or foreman classifications, it will be filled in the following manner:

(a) Notices of jobs available and the dates they are to take effect will be posted on the employee bulletin boards for a period of not less than ten (10) days, and copies of such notices will be mailed to the Union at the time they are posted. Action with respect to filling available jobs will be taken within two (2) weeks after the deadline for filing applications for such job except that where an effective date for the job is posted, action shall be taken on or before such effective date.

(b) An employee interested in being considered as a candidate for a job vacancy posted in accordance with the provisions of this Section may bid for the job in writing on a form to be provided by the Company for that purpose.

(c) Except in emergencies and after consultation with the Business Representative, or Chief Steward of the Union, no person will be hired for such job until notice of availability of such job has been posted for ten (10) days.

(d) The Company will notify the Union of the names of the employees who have been awarded any such jobs.

(e) When it is necessary for the Company to temporarily promote an employee for two (2) or more hours, the employee shall be paid the base hourly rate of the job to which he is temporarily promoted for the entire day on which temporary promotion is made. When there is a temporary promotion in a work unit, preference shall be given to the employee in that unit having the most classification seniority provided operational requirements so permit and provided he is qualified to perform the work. It shall then be offered in descending order of classification seniority to qualified employees.

(f) When there is a permanent transfer under Section 8.4 in a work unit, preference shall be given to the employee in that work unit having the most classification seniority, provided operational requirements so permit and provided he is qualified to perform the work and has submitted a bid for the job in accordance with Section 8.4(b).

(g) In awarding job vacancies in the project person classification the most senior qualified employee will be awarded the job. In awarding job vacancies in the fore-person position seniority shall be a consideration, however, the Company may select the most qualified individual to be awarded the position.

SECTION 8:5. Employees shall accumulate the following categories of seniority:

(a) Company Seniority-Length of continuous service with the Company within the bargaining unit.

(b) Classification Seniority-Length of continuous service in a particular job classification.

SECTION 8:6. The above types of seniority shall be applied as indicated below:

(a) When an employee is unable to perform in his regular job title due to a permanent partial disability or a temporary partial disability expected to last more than thirty (30) consecutive calendar days, he or she may replace the employee within the least Company Seniority in any other job title in which he is able and qualified to perform the work. The employee so replaced shall be subject to the provisions of Section 8.6(b) below.

(b) When it is necessary because of lack of work, permanently to lay off an employee in any job title, the order shall be from those with the least Classification Seniority within that job title to hose with the most. An employee so laid off may replace the employee with less Company Seniority in any other job title provided he is qualified to perform the work.

(c) When there is a recall after layoff, an employee qualified to perform the work available shall be reinstated to Company employment in the order of his Company Seniority.

(d) Insofar as practical, the Company will recognize seniority of employees requesting a transfer to another shift or work responsibility. Considerations shall be given to the reason for the transfer, and insofar as practical the Company will endeavor to grant such request. The Company agrees to maintain a list of those employees desiring such transfers and will use the list to facilitate consideration of employees for transfers.

## ARTICLE IX – HOURS, OVERTIME, HOLIDAYS

SECTION 9:1.  HOURS, OVERTIME, HOLIDAYS.  The purpose of this Article is to outline the normal hours of work and to provide the basis for computing overtime payments.

SECTION 9:2.  For the purpose of computing overtime pay, the payroll week shall begin at 12:01 A.M. Sunday.  All hours worked on any shift that begins at or before midnight shall be considered as belonging to the day in which such shift begins.

SECTION 9:3.  Eight (8) hours shall constitute a normal workday.  Forty (40) hours shall constitute a normal workweek.  The Employer will endeavor wherever possible to schedule employees to five (5) consecutive workdays within a workweek.

SECTION 9:4.  Time and one-half (1 1/2X) will be paid for all hours worked by an employee:

(a) Over forty (40) hours worked in any workweek.

(b) Over eight (8) hours worked in any workday.

SECTION 9:5.  NONDUPLICATION.  Both daily and weekly overtime will not be paid for the same hours worked.

SECTION 9:6.  HOLIDAYS.  Straight time for eight (8) hours will be paid for each of the following holidays:

| | |
|---|---|
| New Year's Eve | Thanksgiving Day |
| New Year's Day | Friday after Thanksgiving Day |

|                  |                      |
|------------------|----------------------|
| Memorial Day     | Christmas Eve        |
| Independence Day | Christmas Day        |
| Labor Day        | Martin L. King Holiday |

SECTION 9:7. HOLIDAY WORK. When a holiday falls on an employee's regularly scheduled day off, he shall receive an additional eight (8) hours straight time pay or an additional day off during the current week or succeeding week, the selection of which shall be decided by the employee. When an employee is required to work on a holiday, work on the holiday will be compensated at the rate of time and one-half (1 1/2X). However, such employee will be required to take a substitute holiday at a later date. Holidays, for all purposes in this Agreement, shall mean the day upon which any one of the aforementioned holidays is observed by The American University. In order to be eligible for holiday pay, employees must work the scheduled days before and after the holiday unless otherwise excused by management.

SECTION 9:8. When a paid holiday falls within an employee's vacation period he shall receive eight (8) straight time hours pay for that holiday in addition to vacation pay.

SECTION 9:9. CALLBACK PAY. Any employee called back to work or called in on his day off, shall be guaranteed four (4) hours work or pay for four (4) hours at his regular, overtime, premium, or holiday rate depending on which rate of pay applies.

SECTION 9:10. REPORT IN PAY. An employee who has not been notified that there is no work available prior to the employee reporting for work shall be given four (4) hours pay at his regular, overtime, premium, or holiday rate, depending on which rate of pay applies.

SECTION 9:11. LUNCH PERIOD. Employees will be granted a thirty (30) minute unpaid lunch break which may be combined with a fifteen (15) minute paid morning break and a fifteen (15) minute paid afternoon break to make up a one (1) hour lunch period by mutual agreement of Management and individual employees.

## ARTICLE X – LEAVES

SECTION 10:1. JURY DUTY. The Company agrees to pay the difference for time which an employee is required to lose on account of service on a jury. The difference will be computed on the employee's regular or premium rate to a maximum of eight (8) hours per day or days involved, less his compensation for being required to serve on such jury. Such employee shall report for his regular work whenever his duties as a juror permit him reasonable time to do so.

SECTION 10:2. MILITARY DUTY. An employee, who is in the reserves of the Armed Forces of the United States, who is required to be absent for military reserve duty is entitled to supplemental pay equal to the difference between the military compensation for such duty and the employee's regular hourly rate multiplied by his regularly

9

scheduled hours. In no case shall the employee's privilege extend beyond two (2) weeks' pay in any calendar year.

SECTION 10:3. FUNERAL LEAVE. It is recognized by the Company and the Union that three (3) workdays may be needed by an employee to attend a funeral. The Employer will grant three (3) days paid leave in these instances for the relatives identified below. Funeral leave shall be operative for the following relatives: wife, husband, son, daughter, sister, brother, mother, father, grandmother, grandfather, grandchild, or guardian. It is agreed that one (1) day of paid leave may be taken for a mother-in-law, father-in-law, sister-in-law, brother-in-law, uncle or aunt. The Employer may grant (and the employee may request) additional leave without pay.

SECTION 10:4. UNPAID LEAVE OF ABSENCE.

    (a) An employee who expects to be absent from work for more than thirty (30) consecutive calendar days for good cause, including leave for service with the Union, may be granted, upon proper application in writing on a form to be provided by the Company for that purpose, a leave of absence of not more than one (1) year in total duration. Such leave shall not be unreasonably denied.

    (b) EXTENSIONS. In the event that an employee on leave of absence is unable to return to work on or before the "Expected Return Date" set forth in his initial application, the employee may apply for an extension in the same manner as provided for in the initial application, but in no case shall the total duration of the initial leave an any subsequently granted extensions exceed one (1) year.

    (c) PAY. Except for an employee entitled to vacation pay, sick leave pay, under the terms of this Agreement, an employee on leave of absence shall not be paid by the Company for any day during the period covered by the leave.

    (d) EMPLOYEE BENEFITS. (Health, Life Insurance, and Disability). Except for an employee entitled to pay under the terms of this Agreement, an employee on leave of absence shall not be covered for employee benefits during the period covered by the leave unless such employee elects to make direct premium payments to the Company to continue his coverage during the period of the leave of absence. Upon such direct payments, the Company shall continue to pay its share of the premium. Arrangements for such direct premium payments must be made with the Employee Benefits Department.

    (e) An employee on leave shall retain his original seniority date but will not accrue vacation or sick time while on a leave of absence. An employee on leave of absence will also have the right to bid for positions and the right to file grievances.

(f) WORK FROM ANOTHER EMPLOYER. An employee on leave of absence may not accept work from another employer during the period covered by the leave, without the express approval of the Company.

(g) UNEMPLOYMENT COMPENSATION BENEFITS. An employee on leave of absence may not apply for Unemployment Compensation Benefits during the period covered by the leave.

(h) The Union and the Company agrees to observe the provisions of the Family Leave Act. During such leave employees may use their available Sick Leave or Vacation.

(i) The Employer agrees to work with all legal immigrants to provide the opportunity to gain either extensions, continuations or other status required by the Immigration and Naturalization Service without having to take a leave of absence. If a leave of absence is necessary, the Employer agrees to give permission for the employee to leave for a period of up to ninety (90) days and return the employee to work with no loss of seniority. Employees shall provide the Employer with proper documentation as to their leave of absence. All of the above shall be in compliance with existing laws. Employees shall accrue no benefits while on such leave.

SECTION 10:5. SICK LEAVE. Employees shall be entitled to paid sick leave which shall accumulate at the rate of one (1) day per month. If an employee starts work between the 1st and the 15th of a month credit shall be given for that month. If he starts work on the 16th through the 31st, no credit will be given for that month. Employees shall be paid one (1) day's pay for each day of Sick Leave not taken during the previous twelve (12) months at the end of June of each year of this Agreement. Probationary employees shall earn, but not be entitled to take, paid Sick Leave until expiration of the probationary period. Employees shall earn Sick Leave at the normal rate whenever they are on paid leave status.

SECTION 10:6. WORKERS' COMPENSATION. The Company will provide Workers' Compensation coverage in accordance with the District of Columbia Workers' Compensation Law.

SECTION 10:7. VACATION.

All employees covered by this Agreement shall be entitled to the following paid vacation:
(a) Each employee covered by the terms of this Agreement shall be entitled to the following: [start date through five (5) years] .833 days are accumulated each month [or ten (10) days per year]; [from five (5) through ten (10) years] 1.25 days are accumulated each month [or fifteen (15) days per year]; and persons with ten (10) or more years service accumulate 1.667 days per month [or

11

twenty (20) days per year]. Employees must work at least six (6) months before they own their vacation or are entitled to take any vacation.

(b) Employees having requested vacation at least one (1) month in advance shall receive their vacation pay in the last pay period prior to the onset of their vacation provided that the employee requested their vacation pay to be issued prior to vacation at least one (1) month in advance. Employees shall select their vacation choices and schedules on the basis of seniority.

Employees must work at least six (6) months before they own their vacation or are entitled to take any vacation.

(c) Employees having requested vacation at least one (1) month in advance shall receive their vacation pay in the last pay period prior to the onset of their vacation provided that the employee requested their vacation pay to be issued prior to vacation at least one (1) month in advance. Employees shall select their vacation choices and schedules on the basis of seniority.

(d) The Employer agrees to pay all employees for all unused vacation upon separation on the next practical pay day. The amount of vacation is pro-rated. It is agreed that the employee's vacation shall be paid at the current rate of pay.

## ARTICLE XI – MISCELLANEOUS

SECTION 11:1. LIMITATION OF WORK BY NON-BARGAINING UNIT EMPLOYEES. Employees excluded from the bargaining unit as defined in Article 1 of this Agreement shall not perform work of employees covered by this Agreement except as follows:

(a) Instructing employees.

(b) Performance of necessary work when absenteeism occurs and a qualified replacement is not immediately available.

(c) Emergencies.

SECTION 11:2. SAFETY. The Company agrees to provide a place of employment which shall be safe and healthy for the employees. The Company shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes adequate to render such place of employment safe, and shall do every other thing necessary to protect the life, health, and safety of the employees. The Company shall repair and maintain every place of employment so as to make it safe. The term "safe" or "safety" as applied to any employment or place of employment shall include conditions and methods of sanitation and hygiene necessary for the protection of the life, health and safety of employees.

(a) The Company shall comply with legal regulations regarding safety of working conditions. Employees shall observe reasonable safety rules, and shall report immediately to their supervisors any accident or injury.

(b) There shall be established a Safety and Health Committee composed of no more than two (2) Company and three (3) Union Representatives which shall meet quarterly or sooner for no longer than one (1) hour at the request of either party to review and discuss safety and health standards problems. Employees serving on this Committee will be paid by the Company for any time away from their jobs during normally scheduled work hours.

Among other things, the Committee may:

(a) Make recommendations for the corrections of unsafe or harmful conditions and the elimination of unsafe or harmful work practices.

(b) Review and analyze all report of injury and illness to bargaining unit employees covered by Workers' Compensation.

(c) Recommend rules and procedures for the prevention of accident and illness and for the promotion of the health and safety of employees.

(d) Upon request, the Company shall provide to employees or the Union, available, relevant information regarding substances in the work place or equipment design.

SECTION 11:3. As a means of promoting personal cleanliness and creating a favorable impression on Students, University Staff and Visitors, employees will be required to wear uniform clothing while on duty. Each employee will be furnished the necessary uniforms at the Company's expense.

SECTION 11:4. SEVERANCE PAY. After completion of five (5) years or more of continuous service with the Company any employee whose employment is terminated only by reason of reduction in force of permanent layoff shall be entitled to severance pay equal to five (5) days of basic pay for each year or fraction thereof of service. Any employee with less than five (5) years of continuous service but more than three (3) years shall be entitled to three (3) days of basic pay for each year or fraction thereof of service. Any employee with less than three (3) years shall be entitled to two (2) days of basic pay for each year or fraction thereof of service. It is agree that under no circumstances shall severance pay be payable in the event of voluntary resignation or termination for just cause.

SECTION 11:5. DISTRIBUTION OF PAYCHECKS. Paycheck will be distributed during the afternoon of the normal workday. Employees have the option of receiving direct deposit for their paychecks.

SECTION 11:6. BILINGUAL DOCUMENTS. The Agreement to be drafted in English and Spanish, but the English version will control for all disputes as to interpretation of the Agreement. All job postings will be in English and Spanish. The Company and the Union will split the cost for the drafting of the Agreement into Spanish.

## ARTICLE XII – GROUP HEALTH INSURANCE

### Effective 7/1/04 to 7/1/05

The Company will provide and make available to all employees Kaiser Permanente Health Care HMO Plan for single coverage. The terms of the coverage is provided in the Kaiser Permanente Health Care Plan Description and accompanying plan documents. Dental insurance is provided through Consumer Dental Care of Virginia for single coverage. Employees requesting single coverage shall co-pay in total twenty one dollars ($21) per week towards the cost of the health insurance and dental plan. In order to receive coverage employees must sign a written authorization to deduct the co-payments from their weekly paychecks. In the event of further cost increases in the cost of the Health Insurance, the Employer will assume the increased costs.

**BOTH PARTIES AGREE THAT THIS CONTRACT (ARTICLE XII HEALTH INSURANCE) WILL BE RE-OPENED BEFORE 7/1/05 SOLELY FOR NEGOTIATING IN GOOD FAITH, FUTURE TERMS AND CONDITIONS.**
**If the Union fails to bargain over health insurance for the year beginning 7/1/05 the company reserves the right to allocate any increase or reduce costs on a 50/50 basis.**

## ARTICLE XIII – LIFE INSURANCE, SICKNESS AND ACCIDENT PLAN

SECTION 13:1. The Company shall provide each employee with twenty thousand dollars ($20,000) of life insurance with A.D.&D.

SECTION 13:2. The Company shall provide each employee with a sickness and accident plan which shall provide each employee with coverage of twenty six (26) weeks at sixty (60%) percent of weekly salary for first (1st) day hospitalizations and eighth (8th) day of illness.

## ARTICLE XIV – WAGES

SECTION 14:1. The wage rates for the job classifications covered by this Agreement are as shown in Exhibit "A" which is attached hereto and made a part of this Agreement. Such wage rates shall not be changed during the period of this Agreement, except by mutual agreement.

SECTION 14:2. In addition to the rates otherwise applicable, fifteen ($.15) cents per hour night shift premium shall be paid for work regularly scheduled on the 3:00 P.M. to 11:30 P.M.(evening) shift, and thirty ($.30) cents per hour night shift premium shall be paid for work regularly scheduled on the 11:00 P.M. to 7:30 A.M. (night) shift.

## ARTICLE XV – SAVINGS CLAUSE

SECTION 15:1. Should any of the terms or provisions of this agreement be held unlawful or unenforceable by reason of any federal or state law, directive, order, rule or regulation now existing or hereafter enacted or issued:

    (a) Only those specified terms or provisions in this Agreement held to be unlawful and unenforceable shall be affected, and all other terms or provisions of this Agreement shall remain in full force and effect for the term of this Agreement.

    (b) Upon the request of either party to this Agreement, the Union and the Employer shall enter into negotiations for the sole purpose of arriving at a mutually satisfactory replacement for such terms or provisions.

## ARTICLE XVI – INDIVIDUAL AGREEMENTS

SECTION 16:1. The Company shall not enter into any agreements with the employees covered hereby, the terms of which conflict with the express terms of this Agreement.

## ARTICLE XVII – NOTIFICATION

SECTION 17:1. The Company agrees that it will notify the Union within seven (7) days of hire, of the name, address, telephone number, and date of employment of new or additional employees hired after the effective date of this Agreement.

## ARTICLE XVIII – UNION RIGHTS

SECTION 18:1. The Union shall have access to Union members and the right to investigate work conditions. The Union will utilize non work time so as not to interfere with the Employer's operation. The Employer will provide space for the Union to meet with Union members at the work site upon request.

SECTION 18:2. The employee shall have the right to inspect his personnel file upon request.

SECTION 18:3. The Employer shall provide space for Union literature in a place convenient for employee use at the work site. All literature posted shall be official Union documents from the Union.

SECTION 18:4. All employees shall have the right to wear Union buttons and other insignia evidencing Union membership and solidarity.

SECTION 18:5. Shop Stewards shall have the right to investigate grievances during work hours provided they notify their supervisor before leaving their work area and report back to their supervisor upon return to the work area. Upon entering the work area

of another supervisor's responsibility, the Steward will contact the supervisor before contacting any employee. Shop Stewards shall not abuse this section.

SECTION 18:6. Shop Stewards shall be notified by the supervisor of all terminations and new employees and shall be given an opportunity to meet with new employees to provide information on the Union.

SECTION 18:7. The Employer agrees to release Shop Stewards up to two (2) times per year during work hours without pay for shop steward training classes upon written notice from the Union of at least ten working days.

## ARTICLE XIX – SUCCESSOR CLAUSE

SECTION 19:1. In the event operations at the Employer's "The American University" location are to be transferred from the existing Employer to another like contractor, the Employer shall make it known to the successor contractor that there is a Collective Bargaining Agreement in place. The successor contractor shall recognize the Union as the sole Collective Bargaining Agent at that location. The successor shall offer to all eligible employees a transfer that shall honor all articles and conditions of employment elsewhere outlined in this Collective Bargaining Agreement.

## ARTICLE XX – DURATION

SECTION 20:1. TERM OF AGREEMENT. This Agreement shall become effective on July 1, 2004, and continue in full force and effect until June 30, 2007, and shall automatically renew itself from year to year thereafter unless written notice to the contrary is received by either party not less than sixty (60) days prior to expiration of the Agreement or any automatic renewal thereafter.

IN WITNESS WHEREOF, the parties hereto have subscribed their names this _____ day of August, 2004

Quality Assured Cleaning Contractors, Inc.          Service Employees International Union, AFL-CIO, Local 82

By: _____                       By: _____
      Chairman

Date: _10-06-04_                                     Date: _12-18-04_

EXHIBIT "A"

Minimum Contract Rates: During the term of this agreement, the following minimum rates shall apply:

**Nothing in this Agreement shall be construed to allow for the reduction of any rate or benefit currently enjoyed by an individual employee.**

| Effective | 7/1/04 | 7/1/05 | 7/1/06 |
|---|---|---|---|
| **Day Shift** | | | |
| Custodian | $11.46 | $11.96 | $12.46 |
| Custodian/Handyman | $12.56 | $13.10 | $13.65 |
| | | | |
| **Evening Shift** | | | |
| Custodian | $11.46 | $11.96 | $12.46 |
| | | | |
| **Night Shift** | | | |
| Custodian | $12.29 | $12.79 | $13.29 |
| Project Person | $12.51 | $13.01 | $13.51 |
| Foreperson | $12.72 | $13.22 | $13.72 |
| | | | |
| **Temporary Employees** (Less than 3 weeks) | $10.50 | $11.00 | $11.50 |

17

## LETTER OF UNDERSTANDING

Local 82 and QACC recognize their mutual interest in reducing health insurance costs and each will attempt to investigate means to reduce these costs including, for example: changes in carriers, the option of employees to receive the company share of premium payments in their checks if they opt out of health insurance coverage, higher deductible to insurance coverage, etc...

Local 82

Quality Assured Cleaning Contractors, Inc

10-18-04
Date

10 - 06 - 04
Date

18

## Addendum

In signing this document as an integral Addendum to the full Agreement to which it is attached, Quality Assured Contractors and the SEIU, Local 82, agree that pursuant to agreement between the parties on August 2, 2004, the effective date of the Agreement will be July 1, 2004, and that Local 82 members will not receive retroactive pay from the Company for the period of July 13-August 1, 2004.

For QACC

*[signature]*

10-06-04

For Local 82

*Luis Benites [signature]*

10|14|04

K
07-1272
JR

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Service Employees International Union, Local 32BJ

## DEFENDANTS

Quality Assured Cleaning Contractors

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  New York County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Fairfax County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas, Hart, Esq.
Slevin & Hart
1625 Massachusetts Avenue, NW, Suite 450
Washington, D.C. 20036
(202) 797-8700

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01272
Assigned To : Robertson, James
Assign. Date : 7/17/2007
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)  FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. Antitrust

☐ 410 Antitrust

○ B. Personal Injury/
Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. Administrative Agency
Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ D. Temporary Restraining
Order/Preliminary
Injunction

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ E. General Civil (Other)        OR        ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ⊗ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☒ 720 Labor/Mgmt. Relations<br>☒ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____ Check YES only if demanded in complaint   **JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 7/18/07   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.